**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-30021
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DEWEY BROWN,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Louisiana
(CR 94 30007 01)

( September 7, 1995 )

Before GARWOOD, WIENER, and PARKER, Circuit Judges.

PER CURIAM[*]:

A jury convicted Dewey Brown ("Brown") on three counts of violating the Lacey Act, 16 U.S.C. §§ 3372 (a)(2)(A) and 3373

---

[*] Local Rule 47.5 provides:
"The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion should not be published.

1

(d)(2).  The district court sentenced Brown to concurrent three-year terms of supervised probation on each count, during which time he is prohibited from hunting.  The sentence also included restitution in the amount of $1,500, a $5,000 fine, and a $75 special assessment.  Brown timely appealed.

Brown argues that the court erred when it included diligent search instructions in the jury charge.  Second, he argues that the phraseology of the instructions created prejudicial presumptions.  Brown appeals his conviction on the basis of these two contentions.  Finding no error, we affirm.

### FACTS

As Brown never directly challenges his conviction on the basis of insufficiency of evidence, the facts may be briefly summarized.  On September 13, 1991, Dewey Brown, Tommy Lee Ramage, and his son, Tommy Lee Ramage, Jr., embarked on a hunting trip to Colorado from Bastrop, Louisiana.  Brown had a muzzle-loader elk hunting license but no other licenses.  On September 15, Brown shot and killed an elk.  On September 17, Brown shot and killed two mule deer.  The following morning Brown shot and killed a black bear, after which he went to a convenience store to purchase a license for the bear.  The trio returned to Louisiana on September 19, 1991.  Before leaving Colorado, Brown did not have the bear inspected and sealed.

### DISCUSSION

The standard of review we apply to jury instructions is whether "the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the

**2**

principles of law applicable to the factual issues confronting them." *United States v. Brown*, 49 F.3d 135, 137 (5th Cir. 1995) (quoting *United States v. Pace*, 10 F.3d 1106, 1120-21 (5th Cir. 1993), *cert. denied*,---U.S.---, 114 S. Ct. 2180, 128 L. Ed. 2d 899 (1994)).

The complained-of jury instructions given to the jury read as follows:

> Counts one, two, and three require you find a violation of state law. You are instructed that the laws of Colorado require that a license be obtained before a person can take a mule deer. The laws of Colorado also require that a license be obtained before a person can take a black bear. The laws of the State of Colorado also require that before a black bear is transported, that it must be inspected and sealed.
> If you find from the evidence that a diligent search of the records maintained by the Colorado Division of Wildlife showed that the defendant failed to obtain a license and to take a mule deer, then you may find that no license was obtained by the defendant to take the mule deer. If you find from the evidence that a diligent search of the records maintained by the Colorado Division of Wildlife showed that the defendant failed to obtain a license at the time he took a black bear, then you may find that the defendant took the black bear without the required license. If you find from the evidence that a diligent search of the records maintained by the Colorado Division of Wildlife showed that the defendant failed to have the black bear inspected and sealed before it was transported out of Colorado, then you may find that the defendant transported the black bear out of Colorado without having it inspected and sealed as required by law.

INCLUSION OF DILIGENT SEARCH JURY INSTRUCTIONS

In order to establish the absence of a matter of which a record was regularly made and preserved by a public office or agency, evidence in the form of a Rule 902 certificate or testimony that a diligent search failed to disclose the report is required. *See* Fed. R. Evid. 803(10).

3

Brown contends that the portion of the diligent search instructions pertaining to the mule deer was inadequate because it failed to distinguish between limited and unlimited licenses.  In Colorado, a limited license as to mule deer is strictly for muzzle-loader hunting.  An unlimited license for mule deer is only for archery hunting.  The defendant contends that since there was a difference between limited and unlimited licenses, the jury instruction should have reflected the difference.  This argument is without merit.

Brown has never contended that he had either license when he killed the mule deer.  A "court is not required to give an instruction for which there is no evidentiary basis in the record." *United States v. Javino*, 960 F.2d 1137, 1144 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 477 (1992).  Consequently, the trial court's diligent search instruction pertaining to the mule deer was appropriate.

Next, Brown argues that the instruction as it relates to the diligent search for the bear license was erroneous because there was no testimony on this issue.  The record reflects otherwise. Henrietta Turner ("Turner"), who works for the State of Colorado, Division of Wildlife, and whose title is staff assistant supervisor to the limited licensing section, testified at trial.  She stated that in order to kill a black bear in Colorado, a hunter can obtain two types of licenses.  One is a limited license which is only for the Spring season.  The other one is an unlimited license which a hunter can obtain over the counter.  It is undisputed that Brown

**4**

purchased an unlimited bear license at 9:00 a.m. on September 18, 1991. However, the jury found that Brown had killed the bear prior to purchasing the license.

At trial, Turner testified that an unlimited license would not show up in the initial record check she conducted. She also described the process by which records of unlimited bear licenses are maintained. She testified that a separate search revealed that Brown had purchased an unlimited bear license on September 18, 1991, at 9:00 a.m. The government also offered the testimony of Joe Oliveros ("Oliveros"), a special agent with the law enforcement division of the U.S. Fish and Wildlife Service. Oliveros also testified that a search of the records revealed that Brown had purchased an unlimited license. However, there was no tesimony as to the existence or nonexistence of a bear license, limited or unlimited, prior to the one purchased by Brown on September 18.

In the determination of whether the evidence supports the charge, the evidence and the inferences therefrom should be examined in the light most favorable to the government. *United States v. Cartwright*, 6 F.3d 294, 300-01 (5th Cir. 1993) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942)). While it must be conceded that none of the government's witnesses expressly stated that a diligent search for the bear license had been conducted, a reasonable inference to draw from their testimony is that a diligent search was in fact performed. Therefore, the trial court's diligent search instruction pertaining to the bear hunting license was proper.

Brown also contends that the diligent search instructions were improper because there was no due diligence testimony as to the inspection and sealing of the bear because the information was germane only to limited licenses. Again, the record reflects otherwise.

Turner testified that under Colorado law a bear is required to be sealed and inspected before it can be taken out of the state. When a bear is brought in for inspection, a questionnaire is filled out, and the information is entered into a computer. Turner testified that she conducted a computer search to determine whether Brown had filled out the required questionnaire. Her search indicated that he had not filled out a questionnaire prior to taking the bear out of Colorado.

Contrary to Brown's assertion, this court, viewing the evidence in a light most favorable to the government, concludes that Turner's testimony established the existence of a diligent search for evidence that Brown had the bear inspected and sealed before leaving Colorado. *See id.* Consequently, the trial court's diligent search instruction pertaining to the inspection and sealing of the bear was proper.

## PREJUDICIAL PRESUMPTIONS

Brown complains that the diligent search instructions created prejudicial presumptions. The heart of his argument is that these instructions erroneously allowed the jury to presume that he had killed the animals in violation of state law if the diligent search testimony indicated that he had not obtained the required licenses.

This argument is unavailing.

"[T]he presence of an imprecise or misleading statement within the jury instruction does not by itself entitle defendants to reversal. Reversible error exists only if the jury charge, considered as a whole, misled the jury as to the elements of the offense." *United States v. McCord*, 33 F.3d 1434, 1447 (5th Cir. 1994), *cert. denied*, 1995 WL 94075 (U.S. June 12, 1995) (No. 94-8192). The charge, considered as a whole, reflects that the Government had to prove every element of a Lacey Act violation, including that Brown had taken the animals without a license, in violation of Colorado law.

## CONCLUSION

Finding no merit in Brown's other points of error, the judgment of the district court is AFFIRMED.